[No. 22397.   Department Two.   April 28, 1931.]

RALPH S. TURNER, *Respondent*, v. WENATCHEE VINEGAR COMPANY, *Appellant*.[1]

[1]Reported in 298 Pac. 683.

*Hughes & Hughes,* for appellant.
*Glenn R. Madison,* for respondent.

BEALS, J.—Defendant corporation, operating a plant for the manufacture of vinegar in Chelan county, ordered from plaintiff, who is engaged in the business of manufacturing wooden tanks and similar products in Whatcom county, three wooden tanks, twenty-two by sixteen feet, intending to use them, as plaintiff was informed, for the storage of vinegar. Written specifications for the tanks were submitted to plaintiff and accepted by him, each tank to cost defendant $525, f. o. b. Wenatchee. The specifications called for best grade, fir tank stock, kiln-dried, the order being for immediate shipment.

The tanks were shipped, "knocked down," early in October, 1927, whereupon defendant discovered that the fir of which the staves had been made was not kiln-dried. Notwithstanding this fact, defendant forthwith proceeded to erect one tank, and to use the same for the storage of cider. The tank leaked, and, after some correspondence between the parties, plaintiff sent to Wenatchee one of his men, Mr. D. A. Osborn, to assemble the other two tanks. Mr. Osborn erected a second tank, which also leaked, to defendant's dissatisfaction. Later, defendant had the staves of the third tank recut and the tank assembled, it being then satisfactory.

The parties not being able to agree upon any settlement, plaintiff brought this action seeking judgment for the sum of $1,472.66, whereupon defendant cross-complained against plaintiff for the sum of $3,503.50 (admitting an offset for the contract price of the tanks), defendant's claim being made up of items of damage for loss of cider, for money paid for work on the tanks, and for freight. The action was tried to a

jury, which returned a verdict in favor of plaintiff for the amount demanded in his complaint.

From a judgment entered against it upon the verdict, defendant appeals, contending that the verdict is not supported by the evidence, is excessive and is against the law; that the court erred in giving to the jury instruction number six; and that the court was guilty of prejudicial misconduct in commenting upon the evidence, and in addressing a remark to a witness for appellant. Appellant also contends that the trial court erred in overruling its motion for a new trial and in entering judgment on the verdict.

The evidence as to the fitness of the respective portions of the tanks as prepared by respondent, and as to the manner in which the tanks were assembled, is extremely conflicting, and it is difficult to form an opinion on the merits of the controversy.

Appellant admits that when the material arrived at its plant, it knew that the same was not of kiln-dried lumber. Respondent admits that the lumber was not kiln-dried, but contends that it was air-dried, the equivalent of or better than kiln-dried material. Appellant accepted the material and proceeded to use it. Under the circumstances shown, appellant is not entitled to a ruling that, as matter of law, it is entitled to avail itself of the fact that the material was not kiln-dried.

Respondent contends that the first tank which was assembled by appellant was improperly put together, in that appellant did not use enough staves, and that consequently the tank necessarily leaked at the top and bottom. As to this tank, we are clearly of the opinion that the question of whether or not the material was properly prepared by respondent, and improperly assembled by appellant, constituted a question of fact upon which the jury was entitled to pass.

Appellant contends that all of the tank staves were improperly beveled, in that the angle of the bevel left open cracks (as to the width of which the testimony is in dispute) between the staves on the inside of each tank. Respondent contends that this was proper construction, as the liquid to be placed in the tanks would cause the inner portion of the staves to expand more than the outer portion. Appellant endeavored to correct the leaking of the tanks by calking the same, and expended a considerable sum of money in this work. Respondent contends that this calking caused the tanks to leak, as the insertion of the calking material between two staves in an endeavor to stop a leak at one place would cause the staves to separate at other points and result in further leakage.

As above stated, the second of the tanks to be assembled was constructed under the supervision of respondent's employee, D. A. Osborn. Respondent contends that the material was all properly cut, and that the second tank was properly assembled, and that if Mr. Osborn's instructions as to the use of the same had been carried out, the second tank would not have leaked. Mr. Osborn testified that he instructed appellant's officers to fill the tank with water and let it stand a week to tighten. Appellant filled the tank with vinegar, which, however, was an immaterial variance, as it seems to be agreed that vinegar and water would have the same effect upon the swelling of the wood of which the tank was constructed.

The tank leaking somewhat when first filled, Mr. Osborn undertook to calk the "chine seam," which is a portion of the tank near or at the bottom. Mr. Osborn denied that he did any calking of the side seams. Respondent contends that appellant, after Mr. Osborn had left, undertook to calk some of the side seams of the second tank, and thereby caused it to leak; it be-

ing respondent's theory that appellant not only calked portions of the tank which should not have been calked, but that the calking was improperly done.

Appellant contends that the testimony in support of respondent's theory as to this portion of the case, constitutes no more than a scintilla of evidence and is not sufficient to support the verdict of the jury, the evidence, as appellant contends, being "inherently improbable and inconsistent with the physical facts shown." Appellant argues that because, after it had the material for the third tank recut and that tank assembled, it did not leak, and because, when it had the material for the other tanks reconditioned and the tanks re-assembled, they did not leak, it must be concluded that the staves as prepared by respondent were improperly cut.

This argument is extremely persuasive, but for some reason it did not appeal to the jury. We have read the evidence, and are satisfied that it cannot be held, as matter of law, that the verdict is without competent evidence to support it. The evidence upon which respondent relies constitutes more than a mere scintilla, and we are satisfied that appellant's contention that the verdict finds no adequate support in the evidence, is not well founded.

In the next place, appellant contends that the trial court erred in making a remark which it addressed to an officer of appellant, who was testifying as a witness on its behalf. In answer to a question on cross-examination as to how long freezing weather had been prevailing at a certain time, during which the tanks were being used by appellant, this witness answered, "I don't know when;" whereupon the court remarked,

"You are not expected to answer exactly, Mr. Haarman, but you have avoided several questions that

were very easy to answer, and I would like to have you answer.''

To this remark of the court, appellant's counsel preserved an exception, not, however, requesting the court to withdraw the remark or instruct the jury to disregard it. Appellant argues that the answer of this witness, who testified that he was appellant's manager, was not completed, but was interrupted by the court making the remark above set forth. The statement of facts shows a completed answer by the witness.

Regardless of whether the witness had completed his answer or not, we cannot hold that the remark of the court constitutes reversible error entitling appellant to a new trial. We have read with care all of Mr. Haarman's testimony, and we are satisfied that it cannot be said that the remark was so unjustified as to entitle appellant to a reversal. Upon such questions as this it is practically impossible to get from a cold record the atmosphere of the trial. It is very evident that the witness at times adopted a rather flippant attitude. While the court might properly have rebuked the witness in the absence of the jury, it cannot be held that the method followed by the court was erroneous.

The court instructed the jury that they should determine the case upon the evidence, and should disregard any statements made by counsel for the respective parties, or by the court, and that, if the jury felt that the court had commented upon the facts, they ''must utterly disregard such comment.'' A large latitude must be allowed to courts in conducting trials, and before any action of a court, such as is here complained of, can be held to be reversible error and a new trial ordered, it must appear that the statements made were in law erroneous, and were unjustified and clearly prejudicial, and such as could not be cured by instructions similar to those here given. If the remark of

the court was to any extent a comment on the facts, within the meaning of the constitutional inhibition, which we doubt, the same was cured by the instructions above referred to given by the court to the jury. In so far as the words of the court constituted a rebuke to the witness, we conclude that, in view of all of the circumstances of the case, it cannot be held that the action of the court was unjustified.

Appellant next assigns error upon the giving by the trial court of its instruction number six, to which instruction it preserved an exception. By this instruction, the court told the jury that if the tanks were not defective in material or workmanship, respondent could recover the balance due on the contract price; that if, on the other hand, the jury should find that the tanks were defective in material and workmanship, and that appellant had notice thereof, appellant, having kept the tanks, would be liable to pay the contract price thereof, less such reasonable sum as was necessarily expended to rectify the defects in the material; that appellant, after its discovery of the defective condition of the tanks, if any, would not be entitled to recover special damages, unless the jury should find that appellant proceeded to use the tanks under the advice and direction of respondent, relying upon respondent's assurance that the tanks, notwithstanding any apparent defects, would be suitable for the purpose for which they were purchased.

Appellant contends that respondent breached both his express and implied warranty, as set forth in appellant's answer and cross-complaint, and urges that, under the instruction complained of, its theory of the case was not properly or adequately submitted to the jury, and that by the instruction there was eliminated from consideration by the jury appellant's contention that the tanks delivered were not reasonably fit for

the use intended. By other instructions, the court submitted the different issues to the jury, and appellant does not complain that any instruction which it requested was by the court refused.

We have carefully considered the instruction complained of, together with the rest of the instructions given, which were not excepted to by appellant. We conclude that appellant's theory of the case was properly submitted to the jury, and that instruction number six does not constitute reversible error.

Finally, appellant contends that the court erred in overruling its motion for new trial and in entering judgment. In support of these assignments of error, no new argument is advanced, appellant relying upon its other assignments of error hereinabove discussed.

The questions submitted to the jury were complicated, and the testimony was often in direct conflict. The jury found in favor of respondent, and a careful examination of the record convinces us that the same contains no error which entitles appellant to relief in this court.

Judgment affirmed.

TOLMAN, C. J., MILLARD, BEELER, and FULLERTON, JJ., concur.